**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| GARY G., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | EP-24-CV-00237-RFC |
| | § | |
| MARTIN O'MALLEY, Commissioner of the Social Security Administration, | § § § | |
| | § | |
| *Defendant*. | § | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Gary G. appeals from the decision of the Commissioner of the Social Security Administration, denying his claims for disability insurance benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI. Pursuant to 28 U.S.C. § 636, U.S. District Judge Leon Schydlower referred this case to the undersigned Magistrate Judge for a report and recommendation, and, subsequently, the parties consented to have the undersigned decide the case and enter final judgment. For the following reasons, the Court finds that the Commissioner's decision should be **AFFIRMED**.

### I.  PROCEDURAL HISTORY

On March 9, 2021, Gary filed DIB and SSI applications alleging disability beginning on March 15, 2020, due to atrial fibrillation, diabetes, neuropathy, dermatitis, and obesity. Tr. Admin. R. 22, 68, 82 [hereinafter Tr.], ECF No. 5.

Gary's applications were initially denied on December 28, 2021, and again upon reconsideration on December 9, 2022. *Id.* at 22. Upon Gary's request, Administrative Law Judge ("ALJ") Thomas G. Henderson conducted a telephonic hearing on August 29, 2023. *Id.* at 22, 41–61. On November 1, 2023, the ALJ issued an unfavorable decision. *Id.* at 19–39. The Appeals

Council denied Gary's request for review on May 20, 2024. *Id.* at 4–10. Thus, the ALJ's decision became the Commissioner's final decision in Gary's case. *Id.* at 4; *see also* 42 U.S.C. §§ 405(g), 1383(c).

## II. DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to a determination of whether (1) the Commissioner's final decision is supported by substantial evidence on the record and (2) the Commissioner applied the proper legal standards. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citation omitted).

Substantial evidence is "more than a scintilla but less than a preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). To determine whether substantial evidence supports the Commissioner's decision, courts weigh "four elements of proof": "(i) objective medical facts; (ii) diagnoses and opinions of treating and examining physicians; (iii) claimant's subjective evidence of pain and disability; and (iv) claimant's age, education, and work history." *Williams v. Colvin*, 575 F. App'x 350, 354 (5th Cir. 2014) (per curiam). The Court cannot "reweigh the evidence in the record, try the issues *de novo*, or substitute [its] judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citation omitted); *see also Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) ("Conflicts of evidence are for the Commissioner, not the courts, to resolve."). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (citation omitted). If substantial

evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Perez*, 415 F.3d at 461.

A court's finding of legal error requires either automatic reversal or harmless error analysis, depending on the steps taken by the ALJ to reach the final decision. *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). Broadly, "[h]armless error exists when it is inconceivable that a different administrative conclusion would have been reached . . . if the ALJ did not err." *Id.* "'Procedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (citation omitted).

## B. Evaluation Process

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 416(i). An ALJ evaluates disability claims according to a five-step sequential process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable impairment; (3) whether the claimant's impairment meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Between steps three and four, the ALJ determines the claimant's "residual functional capacity" ("RFC"). *Id.* §§ 404.1520(e), 416.920(e). The RFC "is the most [the claimant] can still do" despite the limitations caused by her physical and mental impairments. *Id.* §§ 404.1545(a)(1),

416.945(a)(1). The ALJ then considers the RFC to make the step four and step five determinations. *Id.* §§ 404.1520(e), 416.920(e).

At the first four steps, the claimant bears the burden of proving that he is disabled. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021). If the claimant meets this burden, at step five the burden shifts to the Commissioner "prove the claimant's employability." *Id.* (citation omitted). If the Commissioner satisfies this burden, "the burden then shifts back to the claimant to rebut this finding." *Perez*, 415 F.3d at 461 (citation omitted).

## C. The ALJ's Findings

In this case, at step one, the ALJ found that Gary had not engaged in substantial gainful activity since March 15, 2020, the alleged disability onset date. Tr. 24. At step two, the ALJ found that Gary had severe impairments of obesity, osteoarthritis, diabetes mellitus, bipolar disorder, and depression. *Id.* at 24. At step three, the ALJ found that Gary did not have an impairment that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 25.

For Gary's RFC, the ALJ determined that Gary could perform light work[1] with the following limitations: "occasional postural limitations, and the claimant can understand, remember and carry out simple work on a regular and continuing basis (8 hours per day/40 hours per week), with occasional interaction with co-workers, supervisors and public in a routine work setting." *Id.* at 27.

At step four, the ALJ found that Gary's RFC precluded him from performing any past relevant work. *Id.* at 31–32. At step five, the ALJ considered Gary's age, education, work

---

[1] A "light work" job "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and either "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

experience, and RFC and determined that there were jobs that exist in significant numbers in the national economy that Gary could perform. *Id.* at 32–33. Specifically, the vocational expert ("VE") testified that Gary would be able to perform the requirements of representative occupations such as router, marker, and housecleaner, all of which have light exertional levels. *Id.* Therefore, the ALJ concluded, Gary was not disabled from the disability onset date through the date of the ALJ's decision. *Id.* at 33.[2]

**D. Analysis**

Gary alleges that the ALJ erred by failing to perform proper persuasiveness evaluations of the medical opinions of David Biscardi, Ph.D. and Gayle Pitcher, Ph.D. Pl.'s Br. 7–26, ECF No. 8.

*1. Dr. Biscardi's Opinion*

Gary argues that the ALJ failed to assign a "persuasiveness value" to the opinion of Dr. Biscardi, a state agency psychologist, meaning that the ALJ did not state whether he found Dr. Biscardi's determination of Gary's limitations to be persuasive, partially persuasive, unpersuasive, or something similar. *Id.* at 11–12. Gary further argues that, if the ALJ did find Dr. Biscardi's opinion persuasive, then the ALJ should have included the limitations found by Dr. Biscardi in Gary's RFC. *Id.* at 17–18.

For claims filed after March 27, 2017, the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ "will articulate in [his] determination or decision how persuasive [he] find[s] all of the

---

[2] The ALJ determined that Gary met the insured status requirements of the Social Security Act through December 31, 2024. Tr. 24.

medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id.* §§ 404.1520c(b), 416.920c(b). An ALJ is required to explain how he considered the factors of supportability and consistency with respect to a medical opinion or prior administrative medical finding. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). "Supportability" is the degree to which a provider supports his medical opinion by "relevant . . . objective medical evidence and . . . explanations," whereas "consistency" is the degree to which his medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources" in the record. *Id.* §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2).

With respect to Dr. Biscardi's opinion, the ALJ stated, "He supported his assessment with reported activities of daily living[] and mental status findings." Tr. 31. This addresses the supportability factor. The ALJ added that the limitations Dr. Biscardi found "are generally consistent with evidence available at the hearing level showing treatment for [bipolar] disorder, findings of depressed mood, but largely normal mental status findings otherwise." *Id.* This addresses the consistency factor. It is true that the ALJ did not explicitly state that he found Dr. Biscardi's opinion persuasive, but "a case will not be remanded simply because the ALJ did not use 'magic words.' . . . Remand is only appropriate where there is no indication the ALJ applied the correct standard." *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021) (cleaned up). Since the ALJ addressed both supportability and consistency, the ALJ applied the correct standard to evaluate a medical opinion. The Court also concludes that the ALJ must have found Dr. Biscardi's opinion to be persuasive, since he found it to be supported and consistent.

Dr. Biscardi stated that Gary "retains the capacity to understand, remember, carry out and sustain performance of 1–2 step tasks, complete a normal workday, interact briefly/superficially with coworkers/supervisors with limited public contact, and adapt to changes/stressors associated

6

with simple competitive work activities." *Id.* at 125.  Gary argues that Dr. Biscardi's limitations of 1–2 step tasks and superficial contact with coworkers and supervisors were not included in the RFC with no explanation from the ALJ as to why not.  Pl.'s Br. 13–15.

    (a) <u>1–2 Step Tasks</u>

Rather than using Dr. Biscardi's limitation of Gary to 1–2 step tasks, the ALJ limited Gary to "simple work."  However, there are a multitude of cases from other Circuits that conclude that these are not equivalent limitations.  *See, e.g.*, *Mildred B. v. Kijakazi*, No. 19-CV-3532, 2022 WL 1746849, at *4 (N.D. Ill. May 31, 2022); *Tabitha F. v. Saul*, No. 6:19-CV-00618-AA, 2021 WL 374968, at *3 (D. Or. Feb. 3, 2021); *Lilja v. Berryhill*, No. 16–cv–540 (TNL), 2017 WL 1183977, at *28–29 (Mar. 29, 2017); *Dumlao v. Kijakazi*, No. 5:23-CV-00607-AJR, 2023 WL 11843726, at *4 (C.D. Cal. Dec. 15, 2023); *Angelica R. v. Kijakazi*, No. 3:21-CV-50369, 2023 WL 1971647, at *3–4 (N.D. Ill. Jan. 6, 2023), *report and recommendation adopted,* 2023 WL 1970092 (N.D. Ill. Feb. 13, 2023).  *But see Alexandria P. v. Saul*, No. 19-1113-JWL, 2020 WL 1166187, at *3 (D. Kan. Mar. 11, 2020) (concluding that "1–2 step tasks" and "simple, routine and repetitive tasks" were equivalent).  Courts in the Seventh and Ninth Circuits, at least, have held that a limitation to 1–2 step tasks generally limits a claimant to jobs with a Dictionary of Occupational Titles ("DOT") Reasoning Development Level ("RDL") of 1.[3]  *Angelica R. v. Kijakazi*, 2023 WL 1971647, at *3; *Dumlao v. Kijakazi*, 2023 WL 11843726, at *4.  In contrast, a limitation to simple work or simple tasks may encompass an RDL of 2.[4]  *Dumlao v. Kijakazi*, 2023 WL 11843726, at *4.

---

    [3] An occupation with an RDL of 1 requires workers to "[a]pply commonsense understanding to carry out simple one- or two-step instructions."  DOT, App. C, 1991 WL 688702 (4th ed. 1991).

    [4] A job with an RDL of 2 requires workers to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions."  DOT, App. C, 1991 WL 688702 (4th ed. 1991).

7

"[T]here is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim . . . ." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). However, the ALJ "must build an accurate and logical bridge between the evidence and the final determination." *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010). Here, the ALJ failed to create a logical bridge by determining that Dr. Biscardi's opinion was persuasive and then rejecting one of his stated limitations without explanation.

The Fifth Circuit has held (in an unpublished opinion) that an error in an ALJ's finding that a claimant could perform certain jobs is harmless if the ALJ "correctly identifie[s], at the very least, one job that [the claimant] could perform." *Hoelck v. Astrue*, 261 F. App'x 683, 687 (5th Cir. 2008) (per curiam). Two of the jobs that the VE identified that Gary could perform, router and marker, both have RDLs of 2. DOT No. 222.587-038, 1991 WL 672123 (router); DOT No. 209.587-034, 1991 WL 671802 (marker). The last job identified by the VE, housecleaner, has an RDL of 1. DOT No. 323.687-014, 1991 WL 672783 (cleaner, housekeeping). The ALJ correctly identified that Gary could perform the job of housecleaner, of which there are a significant number of jobs in the national economy.[5] Thus, the Court concludes that the ALJ's error in failing to explain his exclusion of the 1–2 step task limitation is harmless error.

(b) "Superficial" versus "Occasional"

Dr. Biscardi limited Gary to superficial and brief interactions with coworkers and supervisors, while the ALJ limited Gary only to "occasional" interactions with coworkers, supervisors, and the public. Gary argues that these are not equivalent limitations. Pl.'s Br. 14.

---

[5] The Fifth Circuit has suggested that both 50,000 and 79,900 jobs in the national economy constitute significant numbers of jobs. *Lirley v. Barnhart*, 124 F. App'x 281, 283–84 (5th Cir. 2005) (per curiam); *Pekrul v. Barnhart*, 153 F. App'x 329, 331 (5th Cir. 2005) (per curiam). Here, the VE testified that 70,000 housecleaning jobs exist in the national economy. Tr. 59.

Thus, the ALJ's failure to include the superficial limitation or explain why he omitted it is error. *Id.* at 14–15.

The Fifth Circuit has not addressed this issue, but the Court finds opinions by other Circuits persuasive. The Sixth Circuit has suggested that an RFC limitation to "occasional" interaction is "not inconsistent" with state agency psychologists' opinions that the claimant should be limited to "superficial" interactions with others. *Reeves*, 618 F. App'x at 275. The Tenth Circuit has held that an RFC limitation to "understand[ing], remember[ing], and carry[ing] out simple instructions in a work-related setting" and "interact[ing] with co-workers and supervisors, under routine supervision" is "tantamount to" a limitation to superficial interactions. *Carver v. Colvin*, 600 F. App'x 616, 619–20 (10th Cir. 2015). Thus, the ALJ's determination here that Gary could "understand, remember and carry out simple work on a regular and continuing basis . . . with occasional interaction with co-workers, supervisors and public in a routine work setting," which is very similar to the language in *Carver*, appears to encompass a limitation to superficial interactions. The Seventh Circuit has also suggested that there may not be a meaningful distinction between "occasional" and "superficial" that "matter[s] for purposes of the RFC analysis." *Reynolds v. Kijakazi*, 25 F.4th 470, 474–75 (7th Cir. 2022); *see also id.* at 475 n.3 (no caselaw or regulations support drawing the distinction that "occasional" focuses on quantity of time spent interacting while "superficial" focuses on quality of interactions). Therefore, the Court concludes that the ALJ did not err, and this issue does not require remand.

2. ***Dr. Pitcher's Opinion***

Gary also claims that the ALJ did not perform a proper persuasiveness evaluation for Dr. Pitcher's opinion. Pl.'s Br. 18. Gary argues that although the ALJ did address supportability and consistency, a "plain reading" of the ALJ's opinion suggests that the ALJ only did so with respect

to Dr. Pitcher's opinion about Gary's inability to sustain concentration, and not the rest of her opinion. *Id.* at 20. Again, Gary argues that such an error is not harmless, because Dr. Pitcher assigned Gary limitations that the ALJ did not include in his RFC. *Id.* at 21.

In addressing Dr. Pitcher's opinion, the ALJ stated:

> She opined that it appears that the claimant is unlikely to have the ability to sustain concentration and persist in work-related activity at a reasonable pace due to unstable mood and anxiety. It appears unlikely that the claimant could maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public, or cope with normal pressures in a competitive work setting. Dr. Pitcher supported her opinion with evidence from her on-time examination and subjective complaints of the claimant. However, this opinion is not fully consistent with her findings on examination or the longitudinal record. During this examination, the claimant had logical thought process, adequate abstract thinking, normal thought content, average intelligence, and adequate concentration and attention. However, she opined that the claimant would not have the ability to sustain concentration. These findings are also not consistent with the evidence of record showing normal mental status findings including clear, coherent, and spontaneous speech; good judgment and insight; normal immediate, recent, and remote memory; normal attention span and concentration; good fund of knowledge; and denial of suicidal and homicidal ideation.

Tr. 31. Because the ALJ restated all of the limitations Dr. Pitcher assigned to Gary, it appears that the ALJ's conclusions as to supportability and consistency were meant to encompass Dr. Pitcher's opinion as a whole. The ALJ addressed supportability by stating that Dr. Pitcher's opinion was "not fully consistent with her findings on examination or the longitudinal record."[6] *Id.* With respect to the consistency factor, the ALJ stated that "*[t]hese findings* are also not consistent with the evidence of record." *Id.* (emphasis added). This language strongly suggests that the ALJ meant to address Dr. Pitcher's findings as a whole, not merely her statement about Gary's inability to sustain concentration.

---

[6] Although the ALJ used the word "consistent," the ALJ is addressing the medical evidence used by Dr. Pitcher to support her medical opinion and so is actually addressing the factor of supportability.

10

The ALJ stated that he found Dr. Pitcher's opinion neither supported by her examination nor consistent with Gary's other medical records and explained why. Therefore, the Court concludes that the ALJ did not find Dr. Pitcher's opinion persuasive, and, thus, would not need to include any of the limitations Dr. Pitcher found in the RFC.

### III. CONCLUSION

For the foregoing reasons, the Court **ORDERS** that the decision of the Commissioner be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).

**SIGNED** this 17th day of December, 2024.

_____
**ROBERT F. CASTAÑEDA**
**UNITED STATES MAGISTRATE JUDGE**